IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

BRANDY BRADLEY                                                          PLAINTIFF

v.                         NO. 3:14-cv-00313 PSH

CAROLYN W. COLVIN, Acting Commissioner                    DEFENDANT
of the Social Security Administration

MEMORANDUM OPINION AND ORDER

Plaintiff Brandy Bradley ("Bradley") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Bradley maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers three reasons why.[1] Bradley first maintains that her borderline intellectual functioning is a severe impairment, and the ALJ erred at step two of the sequential evaluation process when he failed to so find.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

At step two, the ALJ is required to identify the claimant's impairments and determine whether they are severe. An impairment is severe if it has "more than a minimal effect on the claimant's ability to work." See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [internal quotations omitted]. The determination at step two is a medical determination. See Bowen v. Yuckert, 482 U.S. 137 (1987).

The evidence relevant to Bradley's intellectual functioning reflects that she graduated from high school and was never held back a grade. See Transcript at 485-486, 187. She reported, though, that she required special education classes and had difficulty reading. See Transcript at 187. She testified during the administrative hearing that she had difficulty passing the driver's test in Virginia and Arkansas. See Transcript at 501-502. She testified that she failed the test between thirty and forty times before obtaining a driver's permit. In January of 2011, Dr. Dennis Vowell, Jr., Psy.D., ("Vowell") performed a mental diagnostic evaluation and intellectual assessment of Bradley. See Transcript at 186-191. He diagnosed her with, inter alia, borderline intellectual functioning. See Transcript at 190. In June of 2012, Dr. Samuel Hester, Ph.D., ("Hester") performed a mental diagnostic evaluation of Bradley. See Transcript at 431-438. He found little evidence of an intellectual disability.

The ALJ found at step two that Bradley has severe impairments in the form of a "bipolar disorder, post-traumatic stress disorder, and borderline personality traits." See Transcript at 15. He did not consider whether her borderline intellectual functioning is a severe impairment.

The ALJ erred when he failed to consider whether Bradley's borderline intellectual functioning is a severe impairment. As the foregoing reflects, the evidence is conflicting as to whether she has an intellectual disability. Because there is conflicting evidence, a full and fair consideration of her impairments at step two should have included the consideration of her intellectual limitations and whether they have more than a minimal effect on her ability to work.

The ALJ's failure to consider Bradley's intellectual limitations and the effects, if any, they have on her ability to work does not, though, warrant a remand. He incorporated the limitations caused by an intellectual disability into the assessment of her residual functional capacity. Specifically, he found that she has the residual functional capacity to perform unskilled work at all exertional levels but can only perform work where "interpersonal contact would be incidental to the work performed; the complexity of the tasks would be learned and performed by rote, contain few variables, and require little judgment; any supervision would be simple, direct, and concrete." See Transcript at 16. The foregoing findings take into account the effects of any intellectual impairment Bradley might have, and the ALJ's findings are supported by substantial evidence on the record as a whole.

Bradley offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. She maintains that her intellectual disability meets or equals Listing 12.05(c), and he erred at step three when he failed to so find.

At step three, the ALJ is required to determine whether a claimant's impairments meet or equal a listed impairment. See Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The determination at step three is a medical determination, see Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990), and the claimant has the burden of showing her impairments meet or equal a listed impairment, see Pyland v. Apfel, 149 F.3d 873 (8th Cir. 1998).

Listing 12.05 addresses intellectual disability. The introductory paragraph to the listing explains that the disability refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, the evidence demonstrates or supports onset of the impairment before age twenty-two. In order to meet Listing 12.05(c), a claimant must produce the following:

1) evidence satisfying the introductory paragraph of Listing 12.05, see Maresch v. Barnhart, 438 F.3d 897 (8th Cir. 2006), including showing deficits in adaptive functioning, see Cheatum v. Asture, 388 F.3d 574 (8th Cir. 2010);[2]

2) evidence of a valid verbal, performance, or full scale IQ of sixty through seventy and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

---

[2] The introductory paragraph of Listing 12.05 does not define the phrase "deficits in adaptive functioning," but it does provide criteria for assessing the severity required by paragraph (c) of some other mental impairments and by paragraph (d) of Listing 12.05. In Durden v. Astrue, 586 F.Supp.2d 828, 834 (S.D.Tex. 2008), the court identified these criteria to include "adaptive activities of daily living," "social functioning," and "concentration, persistence, or pace." See also Madison v. Colvin, 2013 WL 6504788 (W.D.Ark. 2013).

The medical evidence relevant to Listing 12.05(c) reflects that in January of 2011, or ten months before Bradley's twenty-second birthday, Vowell diagnosed her with, <u>inter alia</u>, borderline intellectual functioning. He found that her verbal IQ score was seventy, <u>see</u> Transcript at 189, but found the following with respect to her adaptive functioning:

> A. How do mental impairments interfere with this person's day to day adaptive functioning? …
>
> Claimant currently does not have a drivers licence, she has been unable to pass the written exam. She does not go shopping alone. Claimant is capable of managing her own finances. Claimant cares for her children with assistance from friends. Good attention to [activities of daily living] were noted.
>
> B. Capacity to communicate and interact in a socially adequate manner? …
>
> Claimant appeared capable of adequate and socially appropriate communication and interaction in today's session.
>
> C. Capacity to cope with the typical mental/cognitive demands of basic work-like tasks?
>
> The claimant appeared to sustain a reasonable degree of cognitive efficiency and was able to track and respond to various kinds of questions and tasks without remarkable slowing or distractibility.
>
> D. Ability to attend and sustain concentration on basic tasks?
>
> As noted in the findings of the mental status exam, the claimant displayed mild impairments in her ability to respond adequately to basic assessment of attention and concentration capacity.
>
> E. Capacity to sustain persistence in completing tasks?
>
> Persistence appeared adequate throughout the session.

> F. Capacity to complete work-like tasks within an acceptable time frame?
>
> The claimant did not display remarkable psychomotor slowing. In terms of mental status type tasks, capacity to perform within a basically acceptable time frame was demonstrated.

See Transcript at 190-191.

In June of 2012, Hester performed his evaluation of Bradley. His findings as to her adaptive functioning mirror the findings made by Vowell. For instance, Hester found that Bradley is "likely to be able to cope with the typical mental demands of basic work-like tasks without a lot of drama," appears to have the ability to "attend and sustain concentration on basic tasks," appears to have "the capacity to sustain persistence in completing tasks," and appears to have "the capacity to complete work-like tasks within an acceptable timeframe if tasks are simple." See Transcript at 438.

The findings of Vowell and Hester are consistent with the other evidence in the record. For instance, Bradley testified during the administrative hearing about her prior employment. See Transcript at 489-491, 494-496. She testified that she stopped working because she became angry with her supervisors and co-workers, not because of a limitation caused by an intellectual disability. In June of 2012, Dr. Brad Williams, Ph.D., reviewed Bradley's medical records and opined that she is capable of work where "interpersonal contact is incidental to work performed, e.g., assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; [and] supervision required is simple, direct, and concrete." See Transcript at 445.

At step three, the ALJ considered whether Bradley has an impairment, or combination of impairments, meeting or equaling a listed impairment. He did so pursuant to Listings 12.04, 12.06, 12.08, and 12.09. He did not consider whether she has an impairment that meets or equals Listing 12.05. He found that she does not have an impairment, or combination of impairments, meeting or equaling a listed impairment.

The ALJ erred when he failed to consider whether Bradley's intellectual disability meets or equals Listing 12.05(c). She has a valid verbal IQ score between sixty and seventy, the score was obtained before her twenty-second birthday, and she has other mental impairments imposing an additional and significant work-related limitation of function. The ALJ's error does not warrant a remand, though, because substantial evidence on the record as a whole establishes that Bradley does not have the requisite deficits in adaptive functioning. With respect to her activities of daily living, he could and did find that she is able to, inter alia, take care of her children, maintain her personal care, prepare weekly meals, do laundry, wash dishes with occasional breaks, use public transportation, and pay bills. See Transcript at 17, 120-125. The ALJ's findings are consistent with those made by Vowell and Hester, both of whom found that Bradley was capable of maintaining her activities of daily living. See Transcript at 190, 437. Vowell and Hester opined that Bradley could interact in a socially adequate manner, see Transcript at 190, 437, although Hester characterized Bradley's ability to do so as limited. Vowell and Hester also opined that Bradley could maintain adequate concentration, persistence, or pace. See Transcript at 191, 438.

Bradley offers a third reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. She maintains that he underestimated the impact of her mental impairments on her residual functional capacity.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

The medical evidence establishes that Bradley's mental impairments give rise to work-related limitations and account for most of the difficulty she has experienced while working. The findings of Vowell, Hester, and Williams outlined above establish, though, that Bradley's mental impairments are not so severe as to prevent all employment.

Bradley faults the ALJ for failing to give greater consideration to her Global Assessment of Functioning ("GAF") scores.[3] The Court cannot agree. He noted two of her GAF scores in evaluating the evidence, but it is not clear what weight he gave the scores. To the extent he accorded the scores little weight, his decision to do so is not error. A GAF score, by its very nature, is imprecise and is simply a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." See

---

[3]

The record reflects that over time, Bradley has been assigned GAF scores of between forty-five and sixty. See Transcript at 195, 206, 217, 396, 402, 408, 419. Vowell assigned Bradley a GAF score of between fifty-one and sixty-one, see Transcript at 190, and Hester assigned Bradley a GAF score of fifty, see Transcript at 437.

Jones v. Astrue, 619 F.3d 963, 973 (8th Cir. 2010) [internal quotation omitted]. Assuming, arguendo, that a GAF score is a reliable measure of functional ability, Bradley's scores fluctuated over time. For instance, the record reflects that Bradley was hospitalized in June of 2010. See Transcript at 342-344. At her admission, she was assigned a GAF score of twenty; at her discharge, she was assigned a GAF score of fifty-two. See Transcript at 342. Moreover, her scores over time suggest largely moderate limitations in functioning, and she has not shown how the assessment of her residual functional capacity was inconsistent with her various GAF scores.

Bradley also faults the ALJ for failing to give greater consideration to her history of mental health treatment. It is true that he did not give extensive consideration to her history of mental health treatment, but his failure to do so does not warrant a remand. The medical evidence reflects that she has a history of mental health treatment, most notably for the abuse she tragically experienced. See Transcript at 193-217, 342-344, 391-430. The history of treatment, though, is inconclusive on the question before the ALJ in this proceeding, i.e., what is the most Bradley can do despite her limitations. Substantial evidence on the record as a whole establishes that despite her history of mental health treatment, she is capable of performing work consistent with her residual functional capacity.

The non-medical evidence is conflicting and capable of more than one acceptable characterization. Bradley testified during the administrative hearing that she stopped working on two occasions because she became angry with her supervisors or co-workers.

The ALJ could and did find, though, that she is able to take care of her children and maintain her personal care. <u>See</u> Transcript at 17, 120-125. He could and did also find that she is capable of taking care of her pet, preparing weekly meals, doing laundry, washing dishes with occasional breaks, using public transportation, paying bills, watching movies, and shopping. <u>See</u> Transcript at 17, 120-125. He also could and did note that her use of medication to treat her mental impairments was conservative and sporadic, and he could and did note that she made conflicting representations about her use of medication. <u>See</u> Transcript at 20.

Substantial evidence on the record as a whole supports the ALJ's assessment of Bradley's functional residual capacity. He adequately considered the medical and non-medical evidence and could assess her residual functional capacity as he did.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Bradley's complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 24th day of September, 2015.

_____
UNITED STATES MAGISTRATE JUDGE